(Nos. 71877, 71878, 71879, 71880, 71881, 71882, 71883, 71884, 71885, 71886, 71887, 71888 cons

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARC R. ANDERSON, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN W. BILENKO, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES A. BOYER, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID J. CAREY, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN D. DONCHEZ, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RAYMOND A. DREW, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEVE C. KADLEC, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY F. KOLOVITZ, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHRIS (C.K.) McCRACKEN, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARK T. MOLZER, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SCOTT A. ROKITA, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RIAN P. SANDERS, Appellee.

*Opinion filed April 16, 1992.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn Kaplan, Solicitor General, and Terence M. Madsen and Douglas K. Smith, Assistant Attorneys General, of counsel), for the People.

Gayle Tronvig Carper, of Macomb, for appellee Marc R. Anderson.

James P. O'Malley, of Oak Park, for appellee John W. Bilenko.

James A. Trannel, of Dubuque, Iowa, for appellee James A. Boyer.

Arthur J. Inman, of Peoria, for appellee David J. Carey.

Thomas J. Royce, of Chicago, for appellee Brian D. Donchez.

Michael L. Neff, of Macomb, for appellee Raymond A. Drew.

No appearance for appellee Steve C. Kadlec.

Thomas C. Brandstrader, of Mt. Prospect, for appellee Anthony F. Kolovitz.

James Patrick Murphy, of Macomb, for appellee Chris (C.K.) McCracken.

H. Wayne Statham, of Galesburg, for appellee Mark T. Molzer.

Joseph C. O'Donnell, of Macomb, for appellee Scott A. Rokita.

Dean A. Stone, of Macomb, for appellee Rian P. Sanders.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Defendants were charged by information with the offense of hazing (Ill. Rev. Stat. 1989, ch. 144, par. 221). The trial judge dismissed the charges, ruling the hazing statute to be unconstitutionally overbroad and vague. The State now appeals directly to this court pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). We find the hazing statute to be constitutional and reverse the judgments of the circuit court.

The defendants are students at Western Illinois University. The amended information alleges that on or about October 19, 1990, the defendants, members of the University lacrosse club, engaged in an initiation ceremony for new members of the lacrosse club which involved the consumption of alcohol. It is alleged that as a result of this activity, one of the initiates, Nicholas Haben, died of alcohol poisoning.

A two-count information was filed against defendants in the circuit court of McDonough County on November 2, 1990. Count I charged defendants with unlawful delivery of alcohol to a minor. (Ill. Rev. Stat. 1989, ch. 43, par. 131(a).) In count II, defendants were charged with hazing. Ill. Rev. Stat. 1989, ch. 144, pars. 221, 222.

Defendants moved to dismiss the count II hazing charges on a variety of constitutional grounds and on the ground that the elements of the offense were not

pleaded with sufficient particularity. The trial judge dismissed count II on the latter ground and took the constitutional challenge under advisement in anticipation of the filing of an amended information by the State. The State subsequently filed an amended information. Thereafter, the trial judge again dismissed the count II charges, holding that the hazing statute was unconstitutionally overbroad and vague in violation of the first and fourteenth amendments of the United States Constitution and article I, sections 2 and 4, of the Illinois Constitution. The trial judge rejected defendants' contention that the hazing statute is void as special legislation and violates equal protection. The State now appeals. 134 Ill. 2d R. 302(a).

The defendants present several constitutional challenges to the validity of the hazing statute. They first argue that it is overbroad in that it potentially punishes constitutionally protected speech. Second, they argue that it is unconstitutionally vague because it fails to give notice to citizens that their behavior may be punishable and may lead to arbitrary and discriminatory enforcement. Finally, the defendants argue that the hazing statute violates equal protection and the Illinois Constitution's limitation on special legislation because it applies to only a limited class of people including those connected with colleges and universities, and does not apply to the general population.

The State argues that the hazing statute is not overbroad because it does not apply to much of the conduct asserted by the defendants and, in order to be unconstitutional, it must apply to a substantial amount of protected speech. Further, the State argues that the hazing statute is not unconstitutionally vague because common-sense meanings can be attributed to its terms, and its meaning is clear as applied to the defendants' alleged conduct.

The hazing statute reads as follows:

"Whoever shall engage in the practice of hazing in this state, whereby any one sustains an injury to his person therefrom, shall be guilty of a Class B misdemeanor." Ill. Rev. Stat. 1989, ch. 144, par. 221.

"The term 'hazing' in this act shall be construed to mean any pastime or amusement, engaged in by students or other people in schools, academies, colleges, universities, or other educational institutions of this state, or by people connected with any of the public institutions of this state, whereby such pastime or amusement is had for the purpose of holding up any student, scholar or individual to ridicule for the pastime of others." Ill. Rev. Stat. 1989, ch. 144, par. 222.

Section 2 of the Hazing Act may contain an inartful definition of hazing. Our task here, however, is not to determine whether the hazing statute was well-drafted, but to determine whether it is constitutional. We begin with the presumption that the act is constitutional. (*People v. Bales* (1985), 108 Ill. 2d 182, 188.) Further, in construing an act of the legislature, this court must, if feasible, interpret the act in a way that preserves its constitutionality. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389.

## Overbreadth

The defendants' first argue that the hazing statute is unconstitutionally overbroad because it potentially reaches a significant amount of protected speech, thereby discouraging freedom of expression protected by the first and fourteenth amendments (U.S. Const., amends. I, XIV). Defendants argue, for example, that the hazing statute could prevent the ridiculing of groups like the Ku Klux Klan or Neo-Nazis; the criticism of court decisions or legal theories as part of the teaching process; ridiculing political figures in speeches on cam-

pus; or teaching works of authors such as Twain, Chaucer or Shakespeare, which contain satire or ridicule of other persons.

Before addressing the legal standards of unconstitutional overbreadth, we observe that defendants' argument is based on a misinterpretation of the statute. While defendants concede that someone must receive an "injury to his person" before the statute is violated, defendants assert that the injury may be inadvertent or totally without fault of the defendant. Such an interpretation would make hazing an absolute liability offense. Defendants also assert that "injury to his person" may be interpreted not just as bodily injury, but also as psychological trauma. We disagree with defendants' interpretations.

The hazing statute does not specify a culpable mental state, but this court will not automatically assume that the General Assembly intended an absolute liability offense when no mental state is specified. Under the Illinois Criminal Code's default provision, "[i]f the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4—4 [intent], 4—5 [knowledge] or 4—6 [recklessness] is applicable." (Ill. Rev. Stat. 1989, ch. 38, par. 4—3(b)). Therefore, we must first determine if the General Assembly intended hazing to be an absolute liability offense.

Section 4—9 of the Criminal Code of 1961 governs absolute liability offenses. That section states that "[a] person may be guilty of an [absolute liability offense] if the offense is a misdemeanor which is not punishable by incarceration *** or the statute *** clearly indicates a legislative purpose to impose absolute liability ***." (Ill. Rev. Stat. 1989, ch. 38, par. 4—9.) Hazing is a Class B misdemeanor with maximum penalties of six months' im-

prisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—3(a)(2)) and a fine of $500 (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1(a)(3)). Therefore, unless a clear legislative purpose to impose absolute liability is evident, this court will imply a mental state requirement. See *People v. Gean* (1991), 143 Ill. 2d 281, 286; *People v. Sevilla* (1989), 132 Ill. 2d 113, 120.

The hazing statute was passed by the General Assembly in 1901 (1901 Ill. Laws 145) and no legislative history is available to guide us. Nevertheless, we believe it unlikely that the General Assembly intended that conduct with consequences that were no fault of defendants be punished by six months' imprisonment. Rather, we believe its intention was to deter conduct that is likely to result in injury by punishing conduct which causes injuries that could have been avoided. Thus, we conclude that hazing was not intended to be an absolute liability offense. Further, since we believe the statute was intended to deter reckless (or worse) conduct resulting in injury, we hold that the State must prove recklessness, knowledge or intent as defined in sections 4—6, 4—5 or 4—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, pars. 4—4, 4—5, 4—6).

Defendants next argue that the phrase "injury to his person" in the hazing statute could include psychological injury. Defendants' argument compares that phrase in the hazing statute to similar language in the home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11) and educational intimidation (Ill. Rev. Stat. 1989, ch. 38, par. 12—7.2(d)) statutes. Such an interpretation would give the hazing statute the potential to apply whenever a person's feelings are hurt by being ridiculed. We disagree with the defendants' interpretation.

Defendants note that in *People v. Ehrich* (1988), 165 Ill. App. 3d 1060, the appellate court interpreted the words "any injury" as used in the home invasion statute

to include psychological trauma (165 Ill. App. 3d at 1072). Defendants compare this to the injury requirement in the hazing statute. We reject this argument. The phrase "any injury" (in the home invasion statute) is obviously capable of a much broader meaning than "injury to his person" (in the hazing statute). The appellate court's interpretation of the former carries no weight in this context.

Defendants also observe that section 12—7.2(d) of the Criminal Code, the educational intimidation statute, provides a private cause of action when "any person [suffers] injury to his person" as a result of a violation of the statute. Defendants assert that a criminal violation of the educational intimidation statute does not in every case require a physical injury, and that the legislature therefore could not have intended to limit private causes of action for educational intimidation to instances where the plaintiff sustains physical injury. We reject this argument as well. First, we consider the most likely plain meaning of the statutory language "injury to his person" to be physical or bodily injury. Second, the scope of the private action clause of section 12—7.2(d) has not been decided by this court and we express no opinion on its meaning here. Finally, we consider the recent statutes cited by defendants to be poor guides in interpreting the hazing statute of 1901. A better guide is the Code that was in place in 1901. Under the assault statute in force in 1901, assault was defined as "an unlawful attempt *** to commit a violent injury on the person of another." (Ill. Rev. Stat. 1901, ch. 38, par. 20.) The use of the word "violent" clearly suggests that the legislature of the time was contemplating attempted physical injuries when it wrote "injury on the person of another." While the phrase "injury to his person" in the hazing statute is not identical, it is similar enough that we believe the 1901 legislature again intended that it be inter-

preted to include only physical or bodily injury, and we interpret the phrase in that way.

The doctrine of overbreadth is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom. (See *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611-12, 37 L. Ed. 2d 830, 839-40, 93 S. Ct. 2908, 2915; *Gooding v. Wilson* (1972), 405 U.S. 518, 521, 31 L. Ed. 2d 408, 413, 92 S. Ct. 1103, 1105.) Nevertheless, the doctrine is used sparingly, and in order for a statute to be invalidated for overbreadth, its overbreadth "must not only be real, but substantial as well." *Broadrick*, 413 U.S. at 615, 37 L. Ed. 2d at 842, 93 S. Ct. at 2918; see also *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191.

Viewing the hazing statute interpreted correctly, it is clear that defendants' overbreadth argument fails. The hazing statute reaches only conduct which recklessly, knowingly or intentionally results in the bodily injury of a person. Therefore, the hazing statute does not apply in any of the hypothetical situations cited by defendants. It is difficult to imagine that teaching Twain, satirizing political figures, or criticizing court opinions could result in reckless, knowing or intentional bodily injury to a person. Furthermore, because the hazing statute proscribes only conduct which results in reckless, knowing or intentional bodily injury, it is unlikely to implicate speech or conduct protected by the first amendment at all, much less do so in an overbroad manner. Thus we conclude that the hazing statute is not facially overbroad. In the unlikely event that there are situations where hazing charges could be brought against people engaging in conduct or speech protected by the first amendment, those situations may be cured on a case-by-case basis. See *New*

*York* v. *Ferber* (1982), 458 U.S. 747, 773-74, 73 L. Ed. 2d 1113, 1133, 102 S. Ct. 3348, 3363; *Broadrick*, 413 U.S. at 615-16, 37 L. Ed. 2d at 842, 93 S. Ct. at 2918.

Defendants also make an overbreadth argument citing *People* v. *Wick* (1985), 107 Ill. 2d 62. *Wick* is a due process case (Ill. Const. 1970, art. I, §2) rather than one based on first amendment overbreadth, but we will address the argument here nonetheless. In *Wick*, this court held that the former aggravated arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3)) was not reasonably related to its purpose because it "sweeps too broadly by punishing innocent as well as culpable conduct in setting fires." (*Wick*, 107 Ill. 2d at 66.) Whether or not *Wick* was correctly decided, we see no similar problem with the hazing statute. We do not believe that any conduct which recklessly, knowingly or intentionally injures a person is "innocent" conduct, and we believe that the hazing statute's proscriptions are reasonably related to the goal of protecting possible victims of hazing.

## Vagueness

Defendants next argue that the hazing statute is unconstitutionally vague in violation of due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). Two claims can be made when a law is alleged to be unconstitutionally vague: (1) that it fails to give fair warning to allow innocent people to steer clear of its prohibitions; and (2) that it contains insufficiently clear standards for those who enforce it and may lead to arbitrary or discriminatory enforcement. (See *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99.) Defendants make both claims.

Our first inquiry is to ascertain whether defendants were given a fair warning. Central to this inquiry is that "the statute must give a person of ordinary intelligence

a reasonable opportunity to know what conduct is lawful and what conduct is unlawful." *People v. Bales* (1985), 108 Ill. 2d 182, 188.

Defendants contend that, among others, the phrases "other people in schools" and "people connected with any of the public institutions of this state," describing to whom the hazing statute applies, are vague. We first note that defendants cannot challenge this portion of the statute. " 'A defendant *** may be prosecuted under a statute *** if his conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct.' " (*Bales*, 108 Ill. 2d at 189, quoting *People v. Garrison* (1980), 82 Ill. 2d 444, 454.) Defendants were students at Western Illinois University at the time the alleged hazing incident took place. The statute applies to "students *** in *** universities" and this includes the present defendants. Whether or not the statute is ambiguous as to other people to whom it might apply has no bearing on this appeal.

Defendants also challenge the phrases "pastime or amusement" and "holding up *** to ridicule." The statute does not define these terms, but in the absence of a statutory definition, " 'the courts will assume that statutory words have their ordinary and popularly understood meanings.' " (*People v. Taylor* (1990), 138 Ill. 2d 204, 212, quoting *People v. Blair* (1972), 52 Ill. 2d 371, 373.) Additionally, the English language cannot be expected to be mathematically precise (see *Grayned*, 408 U.S. at 110, 33 L. Ed. 2d at 228-29, 92 S. Ct. at 2300) and we will not require the legislature to specify every activity that could be a "pastime or amusement" or in which a person might be held up to ridicule. See *Taylor*, 138 Ill. 2d at 217 ("Due process does not require 'impossible standards' of clarity").

Webster's defines "pastime" as "something that amuses and serves to make time pass agreeably." (Web-

ster's Third New International Dictionary 1652 (1986).) The same dictionary defines "amusement" as "a means of *** entertaining." (Webster's, at 74.) To "hold up" is "to expose or call to attention" (Webster's, at 1079), and "ridicule" is defined as "the arousing of laughter, mockery, or scorn." (Webster's, at 1953.) We believe that these definitions concur with the popular understanding of "pastime or amusement" and that defendants' alleged initiation activity could be popularly understood as such. Additionally, we believe that defendants' actions could be fairly interpreted as holding the underclassmen up to ridicule. Thus, we hold that the hazing statute is not unconstitutionally vague as applied to defendants' conduct.

If the defendants needed further warning, they could have taken counsel from the case of *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231. In *Quinn*, the appellate court described the fraternity's activities, which included excessive drinking, as "clearly an illegal hazing activity." (*Quinn*, 155 Ill. App. 3d at 237.) While *Quinn* is a civil case concerned with the tort liability of the fraternity, the appellate court held that the hazing statute was meant to apply to dangerous drinking activities such as those practiced by the fraternity.

Our next inquiry is whether the hazing statute promotes arbitrary enforcement because it lacks explicit standards. A statute so vague that it provides no guidelines for enforcement "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender v. Lawson* (1983), 461 U.S. 352, 358, 75 L. Ed. 2d 903, 909, 103 S. Ct. 1855, 1858, quoting *Smith v. Goguen* (1974), 415 U.S. 566, 575, 39 L. Ed. 2d 605, 613, 94 S. Ct. 1242, 1248.

*Kolender* involved a California statute that required persons "who loiter or wander on the streets to provide

a 'credible and reliable' identification and to account for their presence when requested by a peace officer." (*Kolender,* 461 U.S. at 353, 75 L. Ed. 2d at 906, 103 S. Ct. at 1856.) The Court found that the statute allowed police "virtually complete discretion" in determining whether an individual had provided a "credible and reliable" identification, and therefore could detain people practically at their whim. *Kolender,* 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858; see also *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (statute penalizing "rogues," "vagabonds," "habitual loafers" encouraged arbitrary enforcement).

We see no such danger of arbitrary enforcement with the hazing statute. The definition of hazing is broad, but the statute does not allow the police to make an arrest whenever they believe someone has been "held up to ridicule" as defendants suggest, nor does enforcement depend on the interpretation of any other single term in the statute. Hazing charges may be brought only when there is probable cause to believe that an activity was engaged in by students or certain other people for the purpose of holding a person up to ridicule for the pastime of others, and the activity resulted in the reckless, knowing or intentional physical injury of a person. Certainly, police have little discretion in deciding what is and is not physical injury. This, when coupled with the other elements, narrows the conduct which could be considered a violation of the statute and circumscribes the discretion allowed to those charged with enforcing the statute. We therefore find that the hazing statute does not promote arbitrary enforcement and is not unconstitutionally vague.

## Equal Protection and Special Legislation

Finally, defendants claim that the hazing statute violates equal protection (U.S. Const., amend. XIV; Ill.

Const. 1970, art. I, §2) and the limitation on special legislation (Ill. Const. 1970, art. IV, §13) because it applies only to "students or other people in schools, academies, colleges, universities, or other educational institutions of this state, or by people connected with any of the public institutions of this state," and not to the general public.

We note first that the legislature has broad authority to make classifications for the general welfare, and its classifications are presumed to be valid. (*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 236.) For a classification to be valid under either equal protection or special legislation analysis, it need only have a rational relation to a legitimate State objective. (*Potts v. Illinois Department of Registration & Education* (1989), 128 Ill. 2d 322, 334; *Bilyk*, 125 Ill. 2d at 236.) The State certainly has a legitimate interest in protecting people from physical injury, and we conclude that there is a rational basis for limiting the reach of the hazing statute since it is reasonable to assume that most hazing occurs in colleges, universities and other schools. We therefore hold that the hazing statute does not violate equal protection or the limitation on special legislation. Should the legislature see fit to broaden the scope of the statute to include other possible groups, it is free to do so. The legislature need not deal with all conceivable evils at once; it may proceed one step at a time. *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367.

For the foregoing reasons, we hold that the hazing statute is not unconstitutionally vague or overbroad, nor does it violate the constitutional provisions of equal protection and special legislation. We therefore reverse the judgments of the circuit court and remand for further proceedings.

*Judgments reversed.*