MATT PIDGEON, Chairperson, Citizens Advisory Committee, Plaintiff-Appellant, v. THE STATE BOARD OF ELECTIONS, Defendant-Appellee.

Fourth District   No. 4—91—0586

Opinion filed September 3, 1992.—Rehearing denied October 29, 1992.

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

On June 12, 1991, plaintiff, Matt Pidgeon, filed a complaint in Sangamon County circuit court for declaratory and injunctive relief against defendant, State Board of Elections (Board). Plaintiff's complaint alleged that section 3—7 of the Public Community College Act (Act) (Ill. Rev. Stat. 1989, ch. 122, par. 103—7)—which governs the election of members of the board of trustees of a community college district that is contiguous to an experimental community college district—violates the Illinois Constitution in two respects: (1) section 3—7 constitutes special legislation in violation of article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, §13), and (2) section 3—7 constitutes an impermissible delegation of legislative authority to an administrative board in violation of article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, §1) (the separation of powers provision). On June 13, 1991, the Board filed a motion to dismiss plaintiff's complaint. On June 14, 1991, the circuit court conducted a hearing on defendant's motion and granted it. Plaintiff elected to stand on his complaint and now brings this appeal. We affirm.

I. BACKGROUND

In his complaint, plaintiff described himself as "a resident, citizen taxpayer[,] and registered voter in the Belleville Area Community

College District #522" (District), and also as chairman of the Citizens Advisory Committee, which he identified as "a group of citizens concerned with the future of the District."

Plaintiff alleged in his complaint that a recent amendment to section 3—7 of the Act changed the manner in which district trustees were elected: trustees are now elected from within single-member electoral districts, rather than elected at large. (See Pub. Act 85—765, §1, eff. Sept. 24, 1987 (1987 Ill. Laws 3243, 3244).) The complaint further alleged that (1) this new manner of electing trustees applied only to community college districts which are contiguous to an experimental community college district, and (2) because the District is contiguous to the sole experimental community college district in Illinois, the recent amendment to section 3—7 of the Act applies only to the District and nowhere else in the State of Illinois, thus constituting special legislation. Accordingly, plaintiff asked the court to declare unconstitutional these new election procedures in section 3—7 of the Act. Plaintiff also alleged that the Board had begun to draw a map for several single-member electoral districts to provide for the election of the District's new board of trustees, and plaintiff asked the court to enjoin the Board from doing so.

Plaintiff's separation of powers claim alleged that section 3—7 of the Act violates article II, section 1, of the Illinois Constitution because "drawing districts for electoral purposes is a legislative, not administrative function." Plaintiff asserted that section 3—7 of the Act is the only exception to the rule in Illinois that legislative bodies draw the boundary lines of electoral districts.

The Board moved to dismiss plaintiff's complaint for the following reasons: (1) plaintiff lacked standing; (2) the Board was entitled to sovereign immunity; (3) plaintiff's claims were barred by *laches*; (4) plaintiff did not allege any facts demonstrating irreparable harm; (5) section 3—7 of the Act constituted valid legislation; and (6) plaintiff failed to state a cause of action against the Board for which relief could be granted, and he was incapable of doing so.

On June 14, 1991, the trial court granted the Board's motion to dismiss, finding that section 3—7 of the Act did not constitute special legislation.

On appeal, plaintiff again argues that section 3—7 of the Act constitutes special legislation and an improper delegation of legislative authority to an administrative body. Because we agree with the trial court that section 3—7 of the Act is not special legislation, and because we further find that there is no reason why the Board cannot be properly authorized to draw the boundaries of electoral districts,

we affirm the trial court's dismissal of plaintiff's complaint, and we need not address the other grounds that the Board raised in circuit court and reasserts here.

## II. ANALYSIS

### A. Special Legislation

In *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 483 N.E.2d 1245, the Illinois Supreme Court extensively discussed the Illinois constitutional prohibition against special legislation and wrote the following:

"The provision in the Constitution of Illinois prohibiting special legislation states: 'The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter of judicial determination.' (Ill. Const. 1970, art. IV, sec. 13.) Special legislation confers a special benefit or privilege on a person or group of persons to the exclusion of others similarly situated. It discriminates in favor of a select group without a sound, reasonable basis. [Citations.] *** Though the constitutional protections involved are not identical, a claim that the special-legislation provision has been violated is generally judged by the same standard that is used in considering a claim that equal protection has been denied. [Citations.]

Unless legislation operates to the disadvantage of a suspect classification or infringes upon a fundamental right, the legislation, to be upheld as constitutional, must simply bear a rational relationship to a legitimate governmental interest." *Chicago National League Ball Club*, 108 Ill. 2d at 367-68, 483 N.E.2d at 1250.

In *County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 337, 564 N.E.2d 1170, 1178, the supreme court added the following regarding the burden one bears who seeks to have a statute declared unconstitutional:

"As *** guidance in ruling on [legislative] validity ***, we note the presumption that legislative enactments are constitutional [citation]; to the same purpose, statutory classifications created by the legislature 'are presumed to be valid' [citations]. As a result, it is for the party challenging a statute's constitutionality—here, plaintiffs—to rebut these presumptions and prove the unconstitutional nature of the statute."

In *Chicago National League Ball Club,* the supreme court identified the focus of a court's inquiry when a special legislation claim is made as follows:

"There is a presumption in favor of the validity of any legislation ***. *** When a classification under a statute is called into question, *if any state of facts can reasonably be conceived to sustain the classification, the existence of that state of facts at the time the statute was enacted must be assumed.*" (Emphasis added.) *Chicago National League Ball Club,* 108 Ill. 2d at 368-69, 483 N.E.2d at 1250-51.

Plaintiff argues that "[w]hatever evil is perceived in the existence of an at-large election scheme in the [District] must necessarily exist in all community college districts across the State of Illinois." Based upon this assertion, plaintiff contends that "[n]o set of facts exist which would justify the distinction between this District and all other [community college] Districts in the State." We disagree.

In *Chicago National League Ball Club,* the supreme court addressed a similar argument and wrote the following:

"The legislature need not choose between legislating against all evils of the same kind or not legislating at all. Instead it may choose to address itself to what it perceives to be the most acute need. [Citations.] An entire remedial scheme will not be invalidated ' "simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." ' " *Chicago National League Ball Club,* 108 Ill. 2d at 367, 483 N.E.2d at 1250, quoting *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 421-22, 367 N.E.2d 1325, 1329, quoting *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409.

We are aware, and we can presume the legislature is similarly aware, of extensive litigation in this State regarding alleged violations of section 2 of the Voting Rights Act of 1965 (Voting Rights Act) (42 U.S.C. §1973 (1988)). In each such instance, the alleged "evil" the plaintiffs challenged in Federal court was the at-large election of members of some political subdivision of the State of Illinois, as opposed to the election of the members of that political subdivision from single-member districts. (See *McNeil v. Springfield Park District* (7th Cir. 1988), 851 F.2d 937 (upholding the at-large system for electing members to the Springfield park district and the Springfield school board under the Voting Rights Act); see also *McNeil v. City of Springfield* (C.D. Ill. 1987), 658 F. Supp. 1015, 1033 (holding that the

defendant city's commission form of government, composed of commissioners elected in at-large elections, violated the Voting Rights Act).) It is conceivable that the legislature, by amending section 3—7 of the Act, sought to remedy the "evil" of at-large elections in this one political subdivision of the State—the District—in order to avoid requiring the District to litigate the appropriateness of such electoral districts in Federal court. That the legislature did not choose to eliminate all the "evils" of at-large elections in other community college districts at the same time it chose to remedy this "evil" regarding the District does not invalidate the remedial scheme of section 3—7 of the Act. *Chicago National League Ball Club*, 108 Ill. 2d at 367, 483 N.E.2d at 1250.

■ Having found at least one rational basis for the legislature's action, and having further found that there is no reason why the legislature had to change every community college district at once as it seeks to remedy the "evil" of at-large elections, we need not consider plaintiff's special legislation claim further.

We believe our holding in this case complies with the most recent decision of the Illinois Supreme Court on the subject of special legislation, *People v. Anderson* (1992), 148 Ill. 2d 15, 31, 591 N.E.2d 461, 469, wherein the court wrote the following:

"We note *** that the legislature has broad authority to make classifications for the general welfare, and its classifications are presumed to be valid. [Citation.] For a classification to be valid under either equal protection or special legislation analysis, it need only have a rational relation to a legitimate State objective. [Citations.] The State certainly has a legitimate interest in protecting people from physical injury, and we conclude that there is a rational basis for limiting the reach of the hazing statute[, the issue before the supreme court in *Anderson*,] since it is reasonable to assume that most hazing occurs in colleges, universities and other schools. We therefore hold that the hazing statute does not violate equal protection or the limitation on special legislation. Should the legislature see fit to broaden the scope of the statute to include other possible groups, it is free to do so. The legislature need not deal with all conceivable evils at once; it may proceed one step at a time. *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367."

### B. *Separation of Powers*

Plaintiff alleges that section 3—7 of the Act unconstitutionally del-

egates to an administrative body—the Board—the authority to draw the electoral districts from which the new trustees on the District's board will be elected. Citing article II, section 1, of the Illinois Constitution, plaintiff argues that "legislative acts shall be done by legislative bodies, and [the constitution] prohibits usurpation of those powers by the judiciary or executive bodies." Plaintiff then argues that section 3—7 of the Act provides the only instance in Illinois in which an administrative body, as opposed to a legislative body, "has been assigned the politically charged legislative task of drawing district boundaries." Plaintiff concludes by asserting that drawing an election district boundary "is a legislative process and must be accomplished by a legislative body." Plaintiff cites no authority in support of these bald assertions, nor are we aware of any.

The Illinois Constitution specifically addresses redistricting only in article IV, section 3 (Ill. Const. 1970, art. IV, §3), in which it directs how the legislative districts for the Illinois General Assembly shall be redistricted. Interestingly, the constitution directs that if the General Assembly cannot redistrict itself by June 30 of a year following a Federal decennial census, then a Legislative Redistricting Commission shall be constituted with the authority to redistrict the General Assembly. The constitution directs that the legislative leaders of the General Assembly shall appoint the members of this commission and specifically provides that of the two commission members to be appointed by each legislative leader, one must *not* also be a member of the General Assembly.

■■ Clearly, the resulting commission is an administrative body, not a legislative one, yet the constitution mandates this administrative body to determine the district electoral boundaries of the most significant and important legislative body in the State of Illinois, namely, the General Assembly. At a minimum, this constitutional scheme suggests that the legislature's decision in section 3—7 of the Act to delegate the drawing of the District's electoral boundaries to a nonlegislative body is not beyond the pale of Illinois constitutional law.

Last, with regard to the question of the powers of the General Assembly, we find the following observation of the supreme court in *Kluk v. Lang* (1988), 125 Ill. 2d 306, 324, 531 N.E.2d 790, 798, to be relevant to the case before us:

> "[T]he principle is well established that the Constitution is not a grant of power to the General Assembly but only checks the latter's power. [Citations.] Thus, unless in the Constitution of Illinois or of the United States a restriction is found on the General Assembly's discretion to determine how to fill legisla-

tive vacancies by appointment, its discretion should receive judicial deference."

Similarly, where as here, the legislature has seen fit to designate the Board as the appropriate body to determine electoral boundaries for the District's new single-member electoral districts, we will defer to the discretion of the General Assembly.

### III. Conclusion

For the reasons stated, we affirm the judgment of the circuit court dismissing plaintiff's complaint.

Affirmed.

GREEN, P.J., and COOK, J., concur.