No. 3--96--0276

_________________________________________________________________

                                IN THE

                               APPELLATE COURT OF ILLINOIS

                               THIRD DISTRICT

                               A.D. 1996

_________________________________________________________________

THE PEOPLE OF THE STATE OF     )   Appeal from the Circuit Court

ILLINOIS,                      )   of the 14th Judicial Circuit,

                               )   Rock Island County, Illinois

     Plaintiff-Appellee,       )   

                               )

        v.                     )   No. 95--CF--838 

                               )

DOUGLAS E. NITZ,               )   Honorable

                               )   Larry Vandersnick, 

     Defendant-Appellant.      )   Judge Presiding

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

     The defendant, Douglas E. Nitz, who is white, appeals from his

conviction on two counts of the offense of hate crime (720 ILCS

5/12-7.1 (West 1994)), based on his racially-motivated harassment

of his neighbor, Rochelle Gaines, who is African-American.  On

appeal, Nitz raises several constitutional challenges to the

Illinois hate crime statute.  For the reasons which follow, we

affirm.

                                   FACTS

     Nitz was charged with three counts of hate crime (720 ILCS

5/12-7.1 (West 1994)) and one count of contributing to the

delinquency of a minor (720 ILCS 130/2a (West 1994)).  The hate

crime charges were based on the predicate crimes of disorderly

conduct (720 ILCS 5/26-1 (West 1994)) and misdemeanor criminal

damage to property (720 ILCS 5/21-1 (West 1994)).  The alleged

incidents occurred in August 1995.

     The Nitz family lives across the street from the Gaines family

in Milan, Illinois.  The State maintained that on one occasion,

Nitz's son, Brian, became engaged in a shouting match with Gaines'

children.  As things escalated, Brian threw a glass bottle and some

rocks at the Gaines residence.  Gaines testified that some of the

rocks struck her house and a glass fragment struck her.  As Brian

threw the items he screamed at Gaines, calling her a "black nigger

bitch" several times.

     Nitz, a self-described "incomplete paraplegic," emerged from

his house in his wheelchair to determine what was going on.  Gaines

testified that Nitz watched Brian throw things and yell racial

epitaphs and did nothing to intervene.  In addition, Nitz yelled at

Gaines that "if it wasn't for the nigger moving in the neighborhood

we wouldn't have all these problems.  Ever since this nigger moved

in the neighborhood has been nothing but problems.  Niggers is

nothing but problems.  What they needs to do is go back to Africa." 

Gaines testified that after approximately fifteen minutes of abuse,

Brian's mother emerged from the house and forced Brian inside. 

Gaines was extremely upset, hurt, and moved to tears by the

incident.  As a result, she called the Milan police department.

     On another occasion, Nitz and a friend of his were standing on

the street removing a police sticker from Nitz's car when Gaines

and her children pulled into her driveway.  Gaines testified that

as she and her children walked towards their front door, Nitz or

his friend spit on her and Nitz called her a "black bitch" and a

"fucking nigger bitch."  Nitz told Gaines that he "was sick and

tired of the bullshit" and there had "been nothing but problems"

since "you niggers moved into the neighborhood."  Gaines said the

encounter left her in tears and ashamed because her children were

subjected to Nitz's use of profanity and racial slurs.  She again

notified the Milan police department regarding Nitz's behavior.

     Gaines testified that a few days later, Nitz, accompanied by

a friend, confronted her and accused her of calling the police to

get his car towed.  Nitz told her that she was a "damned nigger

bitch" and said he would "get" her.  Gaines testified that she was

alarmed and disturbed by Nitz's unspecified threat.  Consequently,

she called the Milan police department, again complaining about

Nitz's racial slurs.  

     Several of Nitz's neighbors testified that they witnessed

numerous arguments and disputes between Nitz and Gaines.  Nitz

referred to more than one neighbor as a "nigger lover" when he

perceived that a neighbor was intervening in the disputes.  

     Captain Steven Doyle, a 26-year veteran of the Milan police

department, testified that, for the year 1995, the Milan police

department responded to 65 calls and incidents regarding the Nitz

and Gaines households.   

     Ultimately, following a jury trial, Nitz was acquitted on two

counts of violating the hate crime statute and was convicted on two

other counts of committing a hate crime.  Additionally, Nitz was

acquitted of contributing to the delinquency of a minor.  At his

sentencing hearing, the trial court fined Nitz and placed him on 

30 months' probation, including a term of six months in the Rock

Island County jail.  This timely appeal followed.

                                  ISSUES 

     Initially, we note that Nitz does not challenge his sentence

and concedes to the underlying conduct which resulted in the hate

crime charges.  Nitz claims that the hate crime statute is an

unconstitutional infringement on free speech, is unconstitutionally

vague and unconstitutionally overbroad.  Based upon our review of

the record and applicable law, we find no constitutional problems. 

                                 ANALYSIS

     The Illinois hate crime statute replaces the crime of ethnic

intimidation (Ill. Rev. Stat. 1991, ch. 38, par. 12-7.1).  Our hate

crime statute reads:

          "A person commits hate crime when, by reason

          of the actual or perceived race, color, creed,

          religion, ancestry, gender, sexual

          orientation, physical or mental disability, or

          national origin of another individual or group

          of individuals, he commits assault, battery,

          aggravated assault, misdemeanor theft,

          criminal trespass to residence, misdemeanor

          criminal damage to property, criminal trespass

          to vehicle, criminal trespass to real

          property, mob action or disorderly conduct." 

          720 ILCS 5/12-7.1 (West 1994)).

          A first offense under the statute is punishable as a Class 4

felony.

     Nitz's hate crime convictions are based on the predicate crime

of disorderly conduct.  A person commits disorderly conduct "when

he knowingly does any act in such unreasonable manner as to alarm

or disturb another and to provoke a breach of the peace."  720 ILCS

5/26-1 (West 1994).  A violation of this section of the statute is

punishable as a Class C misdemeanor.  

     There is no dispute that Nitz's conduct amounted to disorderly

conduct, which formed the basis of the hate crime charge.  Nor does

Nitz suggest that Illinois' disorderly conduct statute is

unconstitutional.  See People v. Raby, 40 Ill. 2d 392, 240 N.E.2d

595 (1968).  

                              I. Free Speech

     First, Nitz claims that the hate crime statute is

unconstitutional because it impermissibly infringes on his free

speech rights.  We do not agree.

     Initially, we note that a statute is presumptively valid and

a party challenging the constitutionality of a statute bears the

burden of establishing its invalidity.  People v. Warren, No.

79680, slip. op. at 3 (Sept. 26, 1996).  Whenever reasonably

possible, we will construe a statute so as to sustain its

constitutionality.  Warren, slip. op. at 3.  

     Our analysis is controlled by the United States Supreme

Court's decision in Wisconsin v. Mitchell, 508 U.S. 476, 124 L. Ed.

2d 436, 113 S. Ct. 2194 (1993).  The Wisconsin statute examined in

Mitchell is a penalty-enhancement statute which increases the

penalty for various crimes based on the selection of a victim who

is a member of a protected class.  The Illinois hate crime statute

is not technically a penalty-enhancement statute.  Instead, section

12-7.1 creates a crime within itself.  However, this does not

diminish the applicability of the Supreme Court's analysis in

Mitchell to the question of whether or not our statute

unconstitutionally infringes upon free speech.  See In re Vladimir

P., No. 1-95-2141,  slip op. at 7-8 (Sept. 20, 1996).

     In Mitchell, the Court rejected a first amendment challenge to

the Wisconsin statute, and concluded that the statute was "aimed at

conduct unprotected by the First Amendment."  Mitchell, 508 U.S. at

487, 124 L. Ed. 2d at 447, 113 S. Ct. 2194.  The Court

distinguished its decision in R.A.V. v. St. Paul, 505 U.S. 377, 120

L. Ed. 2d 305, 112 S. Ct. 2538 (1992), which struck down an

ordinance that prohibited the use of fighting words which insulted

on the basis of race, color, creed, religion or gender.  R.A.V.,

505 U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. 2538.  The Court

found the ordinance in R.A.V. invalid because it prohibited a class

of fighting words based on the content of the speech.  R.A.V., 505

U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. 2538.  The ordinance

struck down in R.A.V. was directed at bias-motivated speech, while

the statute in Mitchell was aimed at conduct unprotected by the

first amendment.  See Mitchell, 505 U.S. at 487, 124 L. Ed. 2d at

446-47, 113 S. Ct. 2194.  

     In Vladimir P., the Appellate Court, First District,

considered a hate crime case based on the predicate crime of

aggravated assault (720 ILCS 5/12-2 (West 1994)).  In Vladimir P.,

several minors yelled obscene insults at a jewish youth, based on

his religion.  One youth threw a knife handle at the victim and the

respondent threw the knife blade.  The victim was not hit by the

handle or the blade.  Following Mitchell, the first district

rejected the respondent's claim that the hate crime statute

punishes protected speech.  Vladimir P., slip. op. at 8.  The court

in Vladimir P. stated that the hate crime statute "does not punish

an individual for merely thinking hateful thoughts or expressing

bigoted beliefs.  Instead, section 12-7.1 punishes an offender's

criminal conduct in choosing a victim by reason of those beliefs or

hatred, and then committing one of the criminal acts included in

section 12-7.1."  Vladimir P., slip op. at 8.  We agree with this

analysis.  

     Nitz claims that our inquiry should reach a different result

than Vladimir P. because the predicate crime of disorderly conduct

can result in a punishment based on mere speech alone.  Again, we

do not agree with the defendant's argument.  We note initially

that, in Mitchell, the Supreme Court upheld the constitutionality

of the Wisconsin statute which included disorderly conduct as one

of the predicate crimes.  See Wis. Stat. 947.01 (1994).  Even so,

we recognize that Mitchell and Vladimir P. do not involve hate

crime charges predicated solely on disorderly conduct.  

     Nonetheless, Nitz is incorrect in asserting that the Illinois

hate crime statute, predicated on the offense of disorderly

conduct, permits punishment based on the use of offensive words. 

In Raby, our supreme court rejected the proposition that the

disorderly conduct statute punishes speech protected by the first

amendment.  Raby, 40 Ill. 2d at 397, 240 N.E.2d at 598.  The court

noted that "[u]nder no circumstances would the [disorderly conduct]

statute allow persons to be punished merely for peacefully

expressing unpopular views."  Raby, 40 Ill. 2d at 397, 240 N.E.2d

at 598.  As the court stated in People v. Bradshaw, 116 Ill. App.

3d 421, 452 N.E.2d 141 (1983):

          "'Vulgar language, however distasteful or

          offensive to one's sensibilities, does not

          evolve into a crime because people standing

          nearby stop, look, and listen.  The State's

          concern becomes dominant only when a breach of

          the peace is provoked by the language.'" 

          Bradshaw, 116 Ill. App. 3d at 422, 452 N.E.2d

          at 142 (quoting People v. Douglas, 29 Ill.

          App. 3d 738, 742-43, 331 N.E.2d 359, 363

          (1975)).

                               It is well-settled law that in order to sustain a disorderly

conduct charge, the State must prove the defendant performed an act

in an unreasonable manner and that the defendant's action alarmed

and disturbed another person so that a breach of the peace

occurred.  720 ILCS 5/26-1(a)(1) (West 1994).  Following our

review, we find ample evidence in the record supporting the trier

of fact's conclusion that the State proved, beyond a reasonable

doubt, all of the elements of the disorderly conduct statute.  

     Because Nitz's disorderly conduct conviction is not based

solely on unpopular or bigoted speech, we find no infringement on

the constitutionally-protected right of free speech.  In addition,

we find Mitchell and Vladimir P. persuasive authority for our

conclusion that the Illinois hate crime statute is not

unconstitutional.

                               II. Vagueness

     Nitz argues that the hate crime statute is unconstitutionally

vague because it punishes an offender when, "by reason of" a

persons race, one commits a listed crime.  Nitz bases his claim on

the assertion that the statute does not say whether bigotry must be

the single motivation of the actor in committing the crime or one

of several motivations.  The first district has considered and

rejected the same argument.  Vladimir P., slip. op. at 11.  Again,

we agree with the first district's conclusion.  

     Due process requires that a statute must not be so vague that

a person of common intelligence has to guess at its meaning or

application.  Warren, slip. op. at 3.  Where the statute does not

impinge upon first amendment rights, due process is satisfied if:

(1) the statute contains sufficiently definite prohibitions so when

measured by common understanding and practice, a person of ordinary

intelligence has fair warning as to what conduct is prohibited; and

(2) the statute provides law enforcement officers and triers of

fact with sufficiently definite standards so that its application

does not depend merely on private conceptions.  Warren, slip. op.

at 3.

     In terms of common understanding, the phrase "by reason of"

means "because of."  There is no requirement that the statute

specify whether, for instance, racism must be the main motivation,

or one motivation among many, for the statute to apply.  We join in

the first district's conclusion: "[w]e find nothing in the language

of the statute that would prohibit a person with 'mixed motives'

from being prosecuted under the statute."  Vladimir P., slip. op.

at 11.  

     We find the plain language of the hate crime statute clearly

states, in terms commonly used and understood, (1) the nature of

the offense and (2) the guidelines for the proper application of

the statute.  Warren, slip. op. at 4.  As a result, we find the

Illinois hate crime statute is not unconstitutionally vague.

                             III. Overbreadth

     Finally, Nitz contends that the hate crime statute is

unconstitutionally overbroad because of an alleged "chilling

effect" on free speech.  Again, we disagree.

     A statute may be deemed overbroad when it discourages people

from exercising their first amendment rights because of fear of

punishment.  People v. Anderson, 148 Ill. 2d 15, 26, 591 N.E.2d

461, 466 (1992).  The overbreadth doctrine should be employed

sparingly, and only when a challenger can prove that a statute's

overbreadth is real and substantial.  Anderson, 148 Ill. 2d at 26,

591 N.E.2d at 466.  No such showing has been made in this case.  

     Nitz offers no case law or authority in support of his claim

that the statute is overbroad other than to say that some may fear

prosecution for uttering protected speech.  As we previously

explained, Nitz misconstrues the nature of the statute.  The

statute clearly does not punish people for the mere use of words. 

In addition, the Supreme Court, in Mitchell, flatly rejected the

argument that the Wisconsin hate crime statute was

unconstitutionally overbroad because of an alleged chilling effect

on free speech.  Mitchell, 508 U.S. at 488, 124 L. Ed. 2d at 447-

48, 113 S. Ct. at 2201; see also Vladimir P., slip. op. at 9. 

Following the analysis in Mitchell and Vladimir P., we conclude

that the Illinois hate crime statute is not unconstitutionally

overbroad.

                                CONCLUSION

     For the reasons indicated, we find the Illinois hate crime

statute is constitutional in all respects.  We determine that the

statute punishes only racially motivated conduct and does not

unconstitutionally infringe upon individual free speech rights.  In

addition, we find the statute is not unconstitutionally vague or

overbroad.  Accordingly, the judgment of the circuit court of Rock

Island County is affirmed.

     Affirmed.  

     SLATER and MICHELA, JJ., concur.