STATE of Missouri, Respondent,

v.

Keith L. ALLEN, Appellant.

No. 77366.

Supreme Court of Missouri,
En Banc.

Sept. 19, 1995.

Elbert Dorsey, St. Louis, for appellant.

H. Morley Swingle, Pros. Atty., Cape Girardeau County, Jackson, for respondent.

ROBERTSON, Judge.

Section 578.365, RSMo1994, creates the Class A misdemeanor of hazing. Hazing occurs whenever any person knowingly participates in or causes hazing as defined in Section 578.360, RSMo1994. An information charged Keith L. Allen with five counts of hazing in violation of Section 578.365. A jury found Allen guilty of all five counts. Allen appeals, claiming that the hazing statute violates the First Amendment's right to associate, as well as the Fifth and Fourteenth Amendments' rights to equal protection and due process. U.S. Const. amends. I, V and XIV. We have jurisdiction. Mo. Const. art. V, § 3. Affirmed.

## I.

Allen does not challenge the submissibility of the state's case.

In February, 1994, the Southeast Missouri State University chapter of Kappa Alpha Psi invited five male students to enter a pledgeship program that would, if successfully completed, lead to their initiation as full members of the fraternity. Keith Allen was a member of the fraternity.

Between February 7 and February 14, 1994, the members of the fraternity, including Allen, subjected the five pledges to repeated physical abuse, including repeated, open-hand strikes to the back of the neck, the chest and the back, caning of the bare soles of the feet and buttocks, blows to the back with a heavy book and a cookie sheet while on hands and knees, various kicks and punches to the body and "body slamming," an activity in which an active member of the fraternity lifted a pledge in the air and dropped him to the ground. Two pledges left the fraternity's pledgeship program prior to February 14.

On Monday, February 14, 1994, the members of the fraternity, including Allen, put the three remaining pledges through a seven-station circle of physical abuse. At some point in that activity, Michael Davis, one of the pledges, blacked out. He never regained consciousness. He died the following afternoon.

An autopsy revealed that Davis had broken ribs, a lacerated kidney, a lacerated liver and bruises over his upper body. A pathologist testified that Davis died of a subdural hematoma to the brain.

The Cape Girardeau County prosecutor charged Allen with five counts of hazing, one count for each of the fraternity's pledges that were subjected to the pledgeship program's physical abuse. A jury found Allen guilty on all five counts and recommended six months imprisonment on each count. The trial court sentenced Allen to serve six months imprisonment on each count, the sentences for the first three counts to run consecutively and the sentences for the remaining two counts to run concurrently with the first three. This appeal followed.

## II.

Section 578.360 provides:

As used in sections 578.360 to 578.365, unless the context clearly requires otherwise, the following terms mean:

(1) "Educational institution", a public or private college or university;

(2) "Hazing", a willful act, occurring on or off the campus of an educational institution, directed against a student or a prospective member of an organization operating under the sanction of an educational institution, that recklessly endangers the mental or physical health or safety of a student or prospective member for the purpose of initiation or admission into or continued membership in any such organization to the extent that such person is knowingly placed at substantial risk of the loss of life or substantial bodily or psychological harm. Acts of hazing shall include:

(a) Any activity which recklessly endangers the physical health or safety of the student or prospective member, including but not limited to physical brutality, whipping, beating, branding, exposure to the elements, forced consumption of any food, liquor, drug or other substance or forced smoking or chewing of tobacco products; or

(b) Any activity which recklessly endangers the mental health of the student or prospective member, including but not limited to sleep deprivation, physical confinement, or other extreme stress inducing activity; or

(c) Any activity that requires the student or prospective member to perform a duty or task which involves a violation of the criminal laws of this state or any political subdivision in this state.

Section 578.365.1 provides:

A person commits the crime of hazing if he knowingly participates in or causes hazing, as it is defined in section 578.360.

The information filed by the Cape Girardeau County prosecutor in this case appeared in five counts. Each count recited identical facts but contained the name of a different victim. Only Count I is set out in full.

The Prosecuting Attorney of the County of Cape Girardeau, State of Missouri, charges that the defendant, either acting alone or knowingly in concert with another, in violation of Section 578.365, RSMo, committed the class A misdemeanor of hazing, punishable upon conviction under Sections 558.011.1(5) and 560.016, RSMo, in that between the 7th day of February, 1994, and the 14th day of February, 1994, in the County of Cape Girardeau, State of Missouri, the defendant knowingly participated in hazing directed against Michael A. Davis, a student at Southeast Missouri State University, for the purpose of his initiation or admission into the Kappa Alpha Psi Fraternity, with such hazing recklessly endangering the physical health of Michael A. Davis by subjecting him to physical beating.

The argument portion of Allen's brief consists of two points and three and one-quarter pages. Recitation of the statutes under scrutiny accounts for one and one-half of those pages.

Allen's brief is, unfortunately, little more than a casserole of constitutional catch phrases and conclusions, unadorned by legal analysis. Consistent with our responsibilities, however, we have conducted independent research to determine whether Allen's constitutional points have merit. For the reasons that follow, we conclude that they do not.

## A.

Allen first claims that the hazing statutes are "vague, unclear and overbroad." By using these words, Allen apparently intends to invoke the Fifth Amendment's guarantee of due process, applicable to the states through the Fourteenth Amendment. *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

■■■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Due process requires that a statute give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden...." *U.S. v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). Due process also requires that a statute speak with sufficient specificity and provide sufficient standards to prevent arbitrary and discriminatory enforcement. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

Allen's brief asserts in a conclusory fashion that Section 578.360 both fails to warn him of the conduct it forbids and permits arbitrary and discriminatory enforcement. A review of the statutory language does not support Allen's claims.

■ It is, of course, virtually impossible for the legislature to employ the English language with sufficient precision to satisfy a mind intent on conjuring up hypothetical circumstances in which commonly understood words seem momentarily ambiguous. The constitution, however, does not demand that the General Assembly use words that lie beyond the possibility of manipulation. Instead, the constitutional due process demand is met if the words used bear a meaning commonly understood by persons of ordinary intelligence.

■ Section 578.360 defines hazing to include beating. The information charged Allen with hazing by "physical beating." Beating is not a word shrouded in mystery or squirming with ambiguity. To "beat" means "[t]o strike repeatedly." Webster's Third New International Dictionary, 192 (1976). The statute clearly "delineates its reach in words of common understanding." *Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968). The statute is, therefore, not vague.

## B.

Allen next claims that the statute is "overbroad." We assume that this legal conclu-

sion proceeds from Allen's motion that the statute collects within its reach the First Amendment right to associate and that the hazing the fraternity conducts is an incident of association that the government cannot regulate except by language tailored precisely to limit its application to the legitimate governmental purpose upon which the statute focuses. Allen apparently claims that the statute's language is overbroad because it includes football coaches who might place their "athletes in an activity which was an extreme stress inducing activity." Allen also claims that the statute is overbroad because it limits itself to organizations operating under the sanction of a public or private college or university and fails to include secondary education institutions in which hazing also occurs. This latter argument appears to challenge the statute on grounds of underinclusiveness, not overbreadth.

### 1.

■ The state may regulate constitutionally protected rights to associate where the state "demonstrates a sufficiently important interest and employs a means closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976). Allen does not dispute the state's important and legitimate interest in the health, safety and physical well-being of its residents. *Cf. Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261, 280, 110 S.Ct. 2841, 2852, 111 L.Ed.2d 224 (1990) (state has a legitimate "interest in the protection and preservation of human life....") Allen's understated argument, however, is that the statute *sub judice* is not sufficiently closely drawn to meet the constitutional standard.

■ Unconstitutional overbreadth exists when a state's regulation deters a constitutionally protected activity. *Grayned,* 408 U.S. at 115, 92 S.Ct. at 2302–03. The overbreadth cases generally have a factual nucleus in which a state attempts to regulate an organization's constitutionally protected ac-

tivities—the right to associate *ab initio* or to regulate what occurs when the individuals associate. *See Grayned,* 408 U.S. at 121, 92 S.Ct. at 2306 (city's "modest restriction on some peaceful picketing represents a considered and specific legislative judgment that some kinds of expressive activity should be restricted...."); *Cameron v. Johnson,* 390 U.S. 611, 619, 88 S.Ct. 1335, 1340, 20 L.Ed.2d 182 (1968) ("[a]ny chilling effect on the picketing as a form of protest and expression that flows from good-faith enforcement of this valid [anti-picketing] statute would not, of course, constitute ... an impermissible invasion of protected freedoms"); *Cox v. State of Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) ("picketing and parading [are] subject to regulation even though intertwined with expression and association.")

█ Neither is the case here. Section 578.360 does nothing to deter the right of association. Nothing in the statute limits the members and prospective members of Kappa Alpha Psi or any organization from meeting at any time and place they may choose.

Nor does Section 578.360 attempt to regulate constitutionally protected activities that might occur once the fraternity members come together. The statute informs the organization that it and its members may not recklessly endanger the mental or physical health or safety of a prospective member as a condition of admission into or preservation of membership in the fraternity. Allen does not produce, nor does our independent research reveal, any case in which a court has recognized a constitutional right in members of an organization to recklessly endanger the mental or physical health or safety of members or potential members of that organization by physically beating them.

Allen's overbreadth challenge misses the constitutional mark by a wide margin.

### 2.

█ We consider now Allen's argument concerning the statute's under-inclusiveness.

By its terms the statute does not address hazing at the secondary education level. This is, however, of no constitutional consequence.

As we have said, Section 578.360 does not unconstitutionally infringe on the constitutionally protected right to associate. Nor does it regulate constitutionally protected activities undertaken by any organization. Therefore, the statute is constitutional if any rational basis exists for the legislature's failure to include secondary education within its prohibition against hazing. Such a rational basis for that distinction exists.

Students attending secondary education institutions generally live under the watchful, concerned care of parents with whom they have frequent and regular contact. These proximate parents are often able to discover bruises and detect other signs of mental and physical abuse and can protect their child from an organization that conditions membership on hazing. That important parental protection is usually unavailable when a child leaves home to attend a private or public university. The General Assembly could reasonably conclude that the threat of criminal liability was a necessary and appropriate measure to protect students from hazing by organizations in colleges and universities while students were distanced from their parents' protection.

This distinction in parental involvement provides a rational basis for the legislature's failure to include secondary education institutions in its hazing prohibition. It is also sufficient to defeat Allen's underinclusiveness challenge.

### C.

█ Allen's first point also says that Sections 578.360 and 578.365 "violate the equal protection clause of the United States Constitution." However, the words "equal protection" do not appear anywhere else in his written argument. We can discover no justifiable basis for Allen's equal protection claims. The existence of a rational basis for

the distinction drawn by the legislature defeats his overbreadth argument. *See* II, B, 2, *supra.* As to his underinclusiveness argument, "[T]here is no [equal protection] requirement that regulation must reach every class to which it might be applied." *City of St. Louis v. Liberman,* 547 S.W.2d 452, 458 (Mo. banc 1977). The point is denied.

### D.

Finally, Allen's second point asserts that "The 'Information' is vague and does not provide sufficient information in order that the defendant can properly prepare for trial." The information filed in this case by the state is set out at II, *supra.*

The purpose of an information is "to inform the accused of charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal." *State v. O'Connell,* 726 S.W.2d 742, 746 (Mo. banc 1987). Generally, it is enough "to charge the offense in the language of the statute alleged to be violated if the statute sets forth all the constituent elements of the offense." *State v. Kesterson,* 403 S.W.2d 606, 609 (Mo.1966). The requirement that an information "specifically allege all the elements of [a crime] when those elements are already specified by statute is redundant." *O'Connell,* 726 S.W.2d at 747. Thus, where the information expressly refers to a statutory section that contains the elements of the crime, the information is not fatally insufficient even if the information itself does not repeat all of the elements of the offense. *Id.*

Each count of the information filed in this case expressly cites Section 578.365 and charges that Allen "knowingly participated in hazing directed against [the victim] ... with such hazing recklessly endangering the physical health of [the victim] by subjecting him to physical beating." This language points to the statute and tracks its language sufficiently to apprise Allen of the charges against him so that he could prepare a defense and to permit him to plead former jeopardy in the case of acquittal.

The point is denied.

### III.

The judgment of the trial court is affirmed.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH, and COVINGTON, JJ., and ULRICH, Special Judge, concur.