CARPETTA

v.

The PI KAPPA ALPHA FRATERNITY et al.

Court of Common Pleas of Ohio,
Lucas County.

No. CI96–3728.

Decided March 10, 1998.

44

*Britz & Zemmelman* and *Connie Zemmelman,* for plaintiff.

*Robison, Curphey & O'Connell* and *Thomas J. Antonini,* for The Pi Alpha Kappa Fraternity.

*Lydy & Moan* and *R. Jeffery Lydy,* for the Epsilon–Epsilon Chapter, Inc.

*John I. Mattimoe; Vassar, Dills & Dawson* and *Alan Dills,* for Craig Lemesarier.

*Charles A. Stupsker,* for Chad Harris.

*Senerius & Eidy Co., L.P.A.,* and *John W. McMahon,* for John Monnett and James Wallack.

*Manahan, Pietrykowski, Bamman & Delaney* and *Glenn E. Wasielewski,* for Robert Rode.

*Ritter, Robinson, McCready & James* and *Timothy C. James,* for Michael Gingrich.

*Daniel F. Gourash* of *Porter, Wright & Arthur* and *Daniel F. Gourash,* for Eric Chakirelis.

*Kitch, Drutchas, Wagner & Kenney, P.C., Paula Burgess* and *John S. Wasung,* for intervenor Metropolitan Property & Casualty Insurance Company.

*Rand, Gurley, Hanahan & Koerner* and *Joseph M. Gurley,* for Eric Coughlin.

---

CHARLES J. DONEGHY, Judge.

 This R.C. 2307.44 civil hazing case is before the court on the motions to dismiss filed by defendants The Pi Kappa Alpha Fraternity ("the National") and the National's local chapter at the University of Toledo, Epsilon–Epsilon Chapter, Pi Kappa Alpha House Corporation ("the Chapter"). The National and the Chapter ("the moving defendants") filed their motions to dismiss pursuant to Civ.R. 12(B). Because the moving defendants filed their motions after previously having filed answers, the court shall treat the motions as arising under Civ.R. 12(C), motion for judgment on the pleadings.[1] See *Harris v. WGN Continental Broadcasting Co.* (N.D.Ill.1986), 650 F.Supp. 568, 572–573 (Fed.R.Civ.P. 12[b][6] motion filed after the close of pleadings is considered a Fed.R.Civ.P. 12[c] motion). A Civ.R. 12(C) motion is considered under essentially the same standard as a motion filed pursuant to Civ.R. 12(B)(6). Compare *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 264–265, 297 N.E.2d 113, 116–117 (Civ.R. 12[C] ), and *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756 (1988) (Civ.R. 12[B][6] ). See, also, *Harris,* 650 F.Supp. at 573; *Ashland Oil, Inc. v. Arnett* (N.D.Ind.1987), 656 F.Supp. 950, 954. Upon review of the pleadings, memoranda of counsel, and applicable law, the court finds that these motions should be granted in part and denied in part.

## I FACTS

During the fall and winter of the 1995–1996 academic year, the plaintiff, Charles Carpetta, was a student at the University of Toledo in Toledo, Lucas County, Ohio. During that time, Carpetta applied for fraternity membership in

---

1. Civ.R. 12(B) reads as follows:
 "A [Civ.R. 12(B)(6) ] motion * * * shall be made *before* pleading if a further pleading is permitted." (Emphasis added.)
 In relevant part, Civ.R. 12(C) reads as follows:
 "*After the pleadings are closed* * * * any party may move for a judgment on the pleadings." (Emphasis added.)

the Chapter. Carpetta alleges that some individual fraternity members, who are also defendants in this case, conducted the pledge education program and engaged in acts of "hazing" as defined in R.C. 2903.31, the criminal hazing statute. Carpetta alleges:

(1) members "yelled and swore" at Carpetta and other pledges who failed a test on fraternity material;

(2) members gave Carpetta orders using insulting, ridiculing, and offensive language, causing Carpetta to quit the pledge process; but members visited him and convinced him to rejoin;

(3) members required Carpetta to participate in a scavenger hunt and required him to enter an adult bookstore and "have his picture taken holding the largest dildo he could find"; go into "a local gay bar, say, 'One, two, three, cocksuckers!' and take a picture"; go into "a brothel to have his picture taken with prostitutes"; go into a supermarket and "have his picture taken with a summer sausage between his legs and a pledge brother on his knees next to him, simulating oral sex";

(4) one evening, members required Carpetta to sit silently in a dark room at a house owned by the Chapter for two hours with fellow pledge mates; members then yelled "obscenities" at Carpetta and his mates and required him to engage in "various humiliating acts," including simulating anal intercourse with another pledge and dancing for ten minutes with his shirt pulled up above his stomach while members subjected him to humiliating remarks;

(5) that same evening, members required Carpetta to sit alone in a dark room for over two hours after which members subjected him to further verbal abuse; subsequently, members required Carpetta to drink "almost an entire fifth of Tanquery [gin] straight," to strip to his underwear and suffer further verbal insults, and then to have beer poured on his head;

(6) members required him to kneel in beer and rat's blood while they wrapped the intestines of a dead rat around the neck of a nearby pledge mate; the experience almost caused Carpetta to vomit;

(7) members required Carpetta to participate in "Hell Week," January 21–28, 1996, even though he had been diagnosed as having bronchitis and influenza, and even though he told the fraternity members of the diagnosis;

(8) despite his illness, members deprived Carpetta of sleep on the nights of January 21 and 22, 1996; required him to clean the Chapter's two houses; forced him to undergo physical fitness training; spat on him and poured beer, water, urine, chewing tobacco spit, and a blue liquid on him (the later substance "temporarily blinded" him); and subjected him to further verbal assaults;

(9) after taking an ill pledge mate to the hospital on the morning of January 23, 1996, Carpetta quit the fraternity; he was thereafter subjected to cajoling and threats by members who sought to have Carpetta rejoin Hell Week; Carpetta dropped out of school as a direct result of his treatment by the defendants.

Carpetta's sole legal claim in this action is based on alleged violations by the defendants of Ohio's civil hazing statute, R.C. 2307.44.[2] In their motions, the moving defendants assert that the action should be dismissed because the R.C. 2903.31 definition of "hazing," applicable to both the civil and criminal hazing statutes, is unconstitutional.

## II STANDARD FOR JUDGMENT ON THE PLEADINGS

In a Civ.R. 12(C) motion for judgment on the pleadings, the nonmovant is "entitled to have all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in [his or] her favor as true. * * *. Civ.R. 12(C) * * * presents only questions of law, and determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings." *Peterson*, 34 Ohio St.2d at 165–166, 63 O.O.2d at 264–265, 297 N.E.2d at 116–117. In a motion for judgment on the pleadings, a court may not consider any evidentiary materials. *Burnside v. Leimbach* (1991), 71 Ohio App.3d 399, 402, 594 N.E.2d 60, 61–62.

## III DISCUSSION

The moving defendants argue that Carpetta's complaint fails to state a claim. They contend that the definition of hazing contained in R.C. 2903.31 (also referred to as "the statute" or "the hazing statute") is unconstitutional both on its face and as applied in this case. Specifically, the moving defendants argue that R.C. 2903.31 impermissibly regulates speech that is protected by the First Amendment and by Section 11, Article I, Ohio Constitution and, thus, is unconstitutionally overbroad and vague. Because an R.C. 2307.44 civil hazing claim, which is Carpetta's sole claim in this case, is based on the criminal hazing

---

2. In pertinent part, R.C. 2307.44 reads as follows:

"Any person who is subjected to hazing, as defined in division (A) of [R.C. 2903.31], may commence a civil action for injury or damages, including mental and physical pain and suffering, that result from the hazing. The action may be brought against any participants in the hazing, any organization whose local or national directors, trustees, or officers authorized, requested, commanded, or tolerated the hazing, and any local or national director, trustee, or officer of the organization who authorized, requested, commanded, or tolerated the hazing. * * *

"The negligence or consent of the plaintiff or any assumption of the risk by the plaintiff is not a defense to an action brought pursuant to this section."

definition of R.C. 2903.31, the moving defendants assert that Carpetta's hazing claim fails and should be dismissed.

■ Preliminarily, the court notes that the rights and privileges guaranteed by the Freedom of Expression Clauses of Ohio's Constitution are as broad as, and no broader than, the free speech rights ensured by the First Amendment. *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 222–223, 626 N.E.2d 59, 60–62. Thus, the First Amendment and cases interpreting it are the proper bases upon which to review the scope of Section 11, Article I, Ohio Constitution. *Id.* at 222, 626 N.E.2d at 60–61.

■ As a general proposition, statutes designed to promote the public health, safety, and welfare enjoy a presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227. Courts are to liberally construe statutes so as to save them from constitutional infirmities. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 56, 330 N.E.2d 896, 898–899; *State v. Dario* (1995), 106 Ohio App.3d 232, 236, 665 N.E.2d 759, 761. Statutes may be challenged as facially unconstitutional, see *Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 368–369, and unconstitutional as applied, see *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615–616, 93 S.Ct. 2908, 2917–2918, 37 L.Ed.2d 830, 841–843; *In re Gordon* (Apr. 27, 1993), Franklin App. Nos. 92AP–1489, 92AP–1589, 92AP–1596, unreported, 1993 WL 141222. When reviewing alleged facial constitutional defects, courts first are to address an overbreadth challenge and then any vagueness challenge. *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369–370. In this case, the court will first review whether R.C. 2903.31 is unconstitutionally overbroad, both on its face and as applied, and then will determine if the statute is either facially vague or vague as applied.

## A OVERBREADTH

The moving defendants assert that the definition of hazing found in R.C. 2903.31 is unconstitutionally overbroad on its face and as applied because it impermissibly impinges on free speech rights. In relevant part, R.C. 2903.31 reads as follows:

"(A) As used in this section, 'hazing' means doing any act[,] or coercing another, including the victim, to do any act[,] of initiation into any student or other organization that causes[,] or creates a substantial risk of causing[,] mental or physical harm to any person." (Punctuation added.)

### 1. *Facial Overbreadth*

It is well established that the First Amendment needs "breathing space" in order for its guaranteed freedoms to survive. *Broadrick*, 413 U.S. at 611, 93 S.Ct. at 2915, 37 L.Ed.2d at 839; *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 386, 618 N.E.2d 138, 148. Statutes attempting to regulate pure First Amendment rights (*e.g.*, speech, expressive conduct, or association) must be narrowly tailored and designed to further compelling needs of society. *Broadrick*, 413 U.S. at 611–613, 93 S.Ct. at 2915–2917, 37 L.Ed.2d at 839–841. A statute may be invalidated as overbroad on its face only if it affects on a substantial amount of constitutionally protected conduct. *Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d at 368–369; *Houston v. Hill* (1987), 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410; *Rowland*, 67 Ohio St.3d at 387, 618 N.E.2d at 148–149. In making this determination, a court must review the "ambiguous as well as the unambiguous scope of the enactment." *Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d at 369, fn. 6. Generally, a state may not enforce a statute that is substantially overbroad on its face "unless a limiting construction or partial invalidation so narrows [the scope of the statute so] as to remove the seeming threat * * * to constitutionally protected expression." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 840–841. Courts should avoid finding a statute facially overbroad when such a limiting construction could be applied. *Id.; Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 23, 643 N.E.2d 1157, 1168–1169. Claims of overbreadth are entertained sparingly when invoked against ordinary criminal laws. *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916–2917, 37 L.Ed.2d at 840–841. When such laws address, in a "neutral [and] noncensorial manner," conduct that implicitly rather than directly implicates the First Amendment, overbreadth scrutiny is less rigorous. *Id.* at 614, 93 S.Ct. at 2917, 37 L.Ed.2d at 841. The overbreadth must be substantial to "justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842.

"[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. [When the statute is not substantially overbroad, any overbreadth that] may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 615–616, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.

Courts regularly find that statutes challenged as overbroad do not substantially interfere with First Amendment rights and are, thus, not facially overbroad. In one such case, *Broadrick*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, the court addressed a constitutional challenge to an Oklahoma statute that evenhandedly

prohibited state employees from engaging in certain specified political activity. The intent of the legislature was to attract greater numbers of qualified state employees by increasing job security and eliminating "political extortion." *Id.* at 606, 93 S.Ct. at 2913, 37 L.Ed.2d at 836. The court concluded that, although the statute did affect protected conduct, the interference was not substantial when weighed against the important state interests. *Id.* at 617–618, 93 S.Ct. at 2918–2919, 37 L.Ed.2d at 843–844.

Similarly, in *Dario,* 106 Ohio App.3d at 240, 665 N.E.2d at 763–764, the First Appellate District concluded that Ohio's antistalking statute, R.C. 2903.211,[3] was not constitutionally overbroad because the statute, on its face, did not reach a substantial amount of constitutionally protected activity. "The statute is clearly not aimed at the expression of ideas but at oppressing behavior which invades another person's privacy interests." *Id.*

On the other hand, laws that are "susceptible of regular application to protected expression" are substantially overbroad. See *Houston v. Hill* (1987), 482 U.S. 451, 467, 107 S.Ct. 2502, 2512, 96 L.Ed.2d 398, 415. *Rowland,* 67 Ohio St.3d at 388, 618 N.E.2d at 149–150. In *Hill,* the United States Supreme Court held that a Houston, Texas ordinance that outlawed annoying and offensive expressions made to police officers was substantially overbroad because the outlawed expressions were protected and the plain language of the ordinance made such expressions likely to become violations of the law "scores of times daily." *Id.* at 466–467, 107 S.Ct. at 2512, 96 L.Ed.2d at 414–416.

In *Rowland,* the Supreme Court of Ohio concluded that an Akron, Ohio ordinance prohibiting "Loitering for the Purpose of Engaging in Drug–Related Activity" was substantially overbroad because it was targeted at innocent, ordinary or constitutionally protected activities. *Rowland,* 67 Ohio St.3d at 388, 618 N.E.2d at 149–150. Nine of the ordinance's eleven enumerated examples of proscribed conduct were regularly occurring lawful activities. *Id.,* 67 Ohio St.3d at 387, 618 N.E.2d at 148–149. Thus, the court determined that the ordinance was susceptible of regular application to protected expression. *Id.* at 387–388, 618 N.E.2d at 148–150,.

In this case, the court finds that the hazing statute is not substantially overbroad. First, the unambiguous scope[4] of the statute addresses *acts* that

---

3. R.C. 2903.211 reads in pertinent part as follows:

 "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

4. See *Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d at 369 fn. 6.

cause harm. Unlike the ordinances at issue in *Hill* and *Rowland,* the hazing statute does not expressly proscribe First Amendment freedoms.

Second, the hazing statute was enacted to strike at a specific social threat; society is well aware of the dangers facing student and other initiates. See *State v. Brown* (1993), 90 Ohio App.3d 674, 686, 690, 630 N.E.2d 397, 404–405, 407, (with R.C. 2903.31, the legislature intended to regulate the dangers posed by hazing and to punish acts causing injury). See, also, Annotation, Tort Liability of College, University, Fraternity, or Sorority for Injury or Death of Member or Prospective Member by Hazing or Initiation Activity (1989), 68 A.L.R.4th 228, 231; *State v. Allen* (Mo.1995), 905 S.W.2d 874, 877–878; *People v. Anderson* (1992), 148 Ill.2d 15, 31, 169 Ill.Dec. 288, 296, 591 N.E.2d 461, 469; *People v. Lenti* (1964), 44 Misc.2d 118, 120–123, 253 N.Y.S.2d 9, 12–14 (ruling on motion to dismiss indictment.)[5] Several other states have enacted antihazing legislation. See Alabama Code Section 16–1–23; Florida Stat.Ann. Sections 240.262, 240.326; Indiana Code 35–42–2–2; New York Penal Law Sections 120.16, 120.17.[6] The courts in *Allen* and *Anderson* concluded that the antihazing statutes in their states, Missouri and Illinois, respectively, were not unconstitutionally overbroad or vague. *Allen,* 905 S.W.2d at 876–878; *Anderson,* 148 Ill.2d at 22–30, 591 N.E.2d at 465–468.[7] Both courts observed that the statutes sought to protect the

---

**5.** In *Brown,* sorority initiates sustained nose bleeds, blackened eyes, other bruises and swelling, and loss of consciousness after being paddled, slapped, or struck. *Brown,* 90 Ohio App.3d at 679, 630 N.E.2d at 400. In *Allen,* one of five fraternity pledges died as a result of severe physical abuse that included slapping, punching, kicking, and caning. *Allen,* 905 S.W.2d at 875. In *Anderson,* a new member of a university lacrosse club died as a result of alcohol poisoning as part of an initiation ritual. *Anderson,* 148 Ill.2d at 20, 169 Ill.Dec. at 291, 591 N.E.2d at 464. In *Lenti,* the indictment charged the defendants with assaulting initiates with clenched fists, open hands, forearms and feet. *Lenti,* 44 Misc.2d at 119, 253 N.Y.S.2d at 11.

**6.** This court notes that one judge on the Court of Nassau County, New York refused to enforce that state's predecessor antihazing statute, New York Penal Law Section 1030; the judge found that version to be insufficiently informative to warn individuals of criminal sanctions; that judge did not address the statute's constitutionality and expressed that his opinion was in harmony with an earlier decision by another judge in the case. See *People v. Lenti* (1965), 46 Misc.2d 682, 685, 260 N.Y.S.2d 284, 287 (Dowsey, J.). The earlier judge, however, had previously ruled that Section 1030 was not unconstitutionally vague. *People v. Lenti,* 44 Misc.2d 118, 122, 253 N.Y.S.2d 9, 14, *supra* (Oppido, J.). That statute prohibited " 'any person [from engaging] in * * * what is commonly called hazing, in or while attending any of the colleges * * * in this state.' " *Id.,* 44 Misc.2d at 120, 253 N.Y.S.2d at 11.

**7.** The Missouri statute addressed in *Allen* read in pertinent part as follows:
" '(2) "Hazing," a willful act * * * that recklessly endangers the mental or physical health or safety of a student * * * for the purpose of initiation or admission into or continued membership in any such organization to the extent that such person is knowingly placed at substantial risk of the loss of life or substantial bodily or psychological harm.' " *Allen,* 905 S.W.2d at 876.

health and safety of the public by proscribing conduct rather than First Amendment expressions. Thus, the purpose behind the Missouri and Illinois statutes is the same as that behind R.C. 2903.31. See *Brown*, 90 Ohio App.3d at 686, 690, 630 N.E.2d at 404–405.

Third, admittedly, the "ambiguous" scope[8] of the statute may implicate protected speech that causes "harm." However, the moving defendants have failed to prove beyond a reasonable doubt that this is a "substantial" impact of the statute, *i.e.*, "susceptible of regular application to protected expression". *Hill*, 482 U.S. at 467, 107 S.Ct. at 2512, 96 L.Ed.2d at 415; *Rowland*, 67 Ohio St.3d at 388, 618 N.E.2d at 149–150.

Based on the foregoing, the court finds that R.C. 2903.31 is not unconstitutionally overbroad on its face.

### 2. *Overbroad as Applied*

After concluding that the statute is not facially overbroad, the court must determine whether R.C. 2903.31 is overbroad as applied. *Broadrick*, 413 U.S. at 615–616, 93 S.Ct. at 2917–2918, 37 L.Ed.2d at 841–843; *Thompson*, 96 Ohio App.3d at 23, 643 N.E.2d at 1168–1169. The moving defendants note that Carpetta alleges that various instances of speech by the fraternity members harmed him and constitute hazing violations. The moving defendants assert, however, that many of these statements, even though offensive and insulting, are protected by the First Amendment. Carpetta counters that these are "fighting words" and, according to *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, are not entitled to protection.

Thus, whether R.C. 2903.31 survives an overbroad-as-applied challenge hinges on the issue of whether the offensive and insulting expressions in this case are protected speech or, instead, whether they are unprotected "fighting words." In *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035, the court observed that narrow classes of speech are not entitled to constitutional protection.[9] The freedom of expression guaranteed by the First Amendment forbids the states to punish words or language that fall outside of these narrowly limited classes of speech. *Gooding v. Wilson* (1972), 405 U.S. 518, 521–522, 92

---

In pertinent part, the Illinois statute reviewed by the *Anderson* court read as follows:
" 'The term "hazing" in this act shall be construed to mean any pastime or amusement, engaged in by students * * * whereby such pastime or amusement is had for the purpose of holding up any student * * * to ridicule for the pastime of others.' " *Anderson*, 148 Ill.2d at 22, 169 Ill.Dec. at 291, 591 N.E.2d at 464.

8. See *Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d at 369, fn. 6.

9. The court cited obscene, profane, libelous, and "fighting" words. *Id.*

S.Ct. 1103, 1105–1106, 31 L.Ed.2d 408, 413–414 (holding that a statute outlawing "opprobrious words or abusive language," not limited to "fighting words," is unenforceable). Among these limited classes is the category of "the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035. The *Chaplinsky* rule permits statutes to limit language that " '[has] a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.' " *Gooding,* 405 U.S. at 524, 92 S.Ct. at 1107, 31 L.Ed.2d at 415. "Plainly, [words] 'conveying * * * disgrace' or 'harsh insulting language,' [are] not words 'which by their very utterance * * * tend to incite an immediate breach of the peace.' " *Id.,* 405 U.S. at 525, 92 S.Ct. at 1107, 31 L.Ed.2d at 416 citing *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035. Words that would not, under the circumstances (*e.g.,* the recipient holding elective office or being incarcerated), permit an immediate breach do not constitute fighting words. *Gooding,* 405 U.S. at 525–527, 92 S.Ct. at 1107–1109, 31 L.Ed.2d at 415–417. Words that are merely offensive, insulting, annoying and the like are not "fighting words." *Id.* Thus, laws attempting to restrict these types of expressions are invalid. *Hill,* 482 U.S. at 465–466, 107 S.Ct. at 2511–2512, 96 L.Ed.2d at 414–415.

Therefore, the court finds that the various occurrences of solely offensive and insulting speech may be protected expressions. Thus, the expressions would not properly constitute incidents of hazing as defined by R.C. 2903.31 and, therefore, would not properly serve as bases for liability under R.C. 2307.44. Evidence regarding the exact nature of the expressions must be proffered before a determination can be made as to whether these expressions are constitutionally protected.

## B VAGUENESS

In their motion, the moving defendants assert that R.C. 2903.31 is unconstitutionally vague on its face and as applied because several critical terms are undefined and, thus, uncertain. Again, R.C. 2903.31 reads as follows:

"(A) As used in this section, 'hazing' means doing any act[,] or coercing another, including the victim, to do any act[,] of initiation into any student or other organization that causes[,] or creates a substantial risk of causing[,] mental or physical harm to any person."

The moving defendants contend that the following terms and phrases are ambiguous and, thus, vague: (1) "acts of coercion," (2) "acts of initiation," (3) "mental harm," and (4) "substantial risk of mental harm." These defendants also

argue that the statute fails to distinguish offensive protected expressions from unprotected ones.[10]

### 1. *Facially Vague*

The United States Supreme Court has stated that "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227. A law may be unconstitutionally vague if (1) it fails to give persons of ordinary intelligence notice of what is prohibited; (2) it fails to provide reasonable standards for those enforcing the statute, thus, setting the stage for arbitrary or discriminatory enforcement; or (3) it chills or inhibits peoples' exercise of constitutional rights. *Rowland,* 67 Ohio St.3d at 382–384, 618 N.E.2d at 145–147. To survive a facial vagueness challenge, the language of the law must clearly " 'delineate its reach in words of common understanding.' " *Grayned,* 408 U.S. at 112, 92 S.Ct. at 2301, 33 L.Ed.2d at 230, quoting *Cameron v. Johnson* (1968), 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182, 187. However, for a statute to be unconstitutionally vague on its face, the statute must be vague in all its applications. *Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192–1193, 71 L.Ed.2d at 370–371.

The court now turns to reviewing the terms and phrases that the moving defendants assert are vague. First, "acts of coercion" is a phrase that is not found in the statute. Rather, R.C. 2903.31 reads in part as follows: " 'hazing' means doing any act[,] or coercing another, including the victim, to do any act[,] of initiation." Thus, the court finds no vagueness here because the term "coercing" plainly refers to causing another to do an "act of initiation."

Second, the court finds that the phrase "acts of initiation" is not difficult to define.[11] Thus, an "act of initiation into any student or other organization" is any thing done or being done that is related to someone becoming a member of such an organization.

Third, "mental harm" is problematic. Unlike "physical harm," [12] "mental

---

10. The court notes, however, that this issue has been adequately addressed in the overbreadth discussion.

11. "Act" is defined as "1a: a thing done or being done." Webster's Third New International Dictionary (1986) 20. "Initiation" is defined as "1b(1): the rites, ceremonies, ordeals, or instructions with which one is made a member of a sect or society or is invested with a particular function or status (the college fraternity has a scheme of ruthless mock [initiations])." *Id.* at 1164.

12. R.C. 2901.01(C) (now R.C. 2901.01[A][3]) reads as follows: " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

harm" is not defined in R.C. Title 29, in R.C. 2903.31, or in Ohio case law. R.C. 2901.01(E)(1) (now R.C. 2901.01[A][5][a] ) addresses a mental component to "serious physical harm to persons" as follows: "Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." The Legislative Service Commission Comment to R.C. 2901.01 offers a relevant observation:

"It should be noted that while physical illness is included in the concept of physical harm to persons, mental illness is not. *Serious* mental conditions are reserved for the definition of serious physical harm to persons, but the milder mental disturbances cannot be pinpointed with sufficient precision for use in the criminal law." (Emphasis *sic.* ) Ohio Legislative Service Commission, Summary of Am.Sub.H.B. No. 511 (June 1973) 1.

The court finds that the phrase "mental harm" is too unclear and imprecise to afford either notice to persons of what is prohibited or clear and exact enforcement standards to law enforcement officers.

However, R.C. 2903.31 clearly proscribes *acts* of initiation that cause "physical harm" to any person. "Physical harm" is clear and precise, and the phrase affords both notice and enforcement standards without implicating a protected First Amendment right. Accordingly, because R.C. 2903.31 is not vague in all of its applications, the court finds that the statute is not unconstitutionally vague on its face. *Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192–1193, 71 L.Ed.2d at 370–371.

### 2. *Vague As Applied*

A statute that is not facially vague may, nonetheless, be unconstitutionally vague as applied. *Hoffman Estates.*

In this case, Carpetta claims that various statements and acts of the fraternity members constituted "hazing" as defined by R.C. 2903.31. He contends that, as a result of the hazing, he sustained *mental* and *physical* pain, incurred medical expenses, and "dropped out of school." [13] The statutory phrase "mental harm" appears to correspond to "mental pain" used in the complaint; the statutory phrase "physical harm" appears to correspond to the phrase "physical pain" that is also used in the complaint. As discussed above, the court finds that the phrase "physical harm" is adequately clear because the phrase is defined by the statute. However, "mental harm" is not defined, and the court finds that the phrase is "not precise enough for definition" in this case. See Legislative Service Comment, *supra.* Thus, the court finds that the phrase "mental harm" affords

---

13. At this juncture, the court need not determine whether the medical expenses are related to physical pain and whether the "dropp[ing] out of school" is related to mental harm.

(1) insufficient notice to those whose conduct the statute's prohibitions might effect, but (2) inadequate enforcement standards for law enforcement officers. See *Rowland,* 67 Ohio St.3d at 382–384, 618 N.E.2d at 138–147. As discussed above, the court already has limited the scope of this statute as it applies to the defendants in this case (*i.e.,* the statute only proscribes acts and other unprotected expressive conduct). The court now finds that, to the extent that Carpetta seeks recovery under the statute for any "mental harm" inflicted upon him, the statute is unconstitutionally vague. Thus, the court further finds that Carpetta may only recover damages arising from physical harms sustained from acts of initiation. However, he may recover damages for "mental and physical pain and suffering" that result from such acts. R.C. 2307.44

## C SEVERABILITY

As discussed above, the moving defendants have argued that the statute impermissibly seeks to restrict constitutionally protected expression and unlawfully attempts to penalize any initiation activity that causes an undefined and imprecise "mental harm." The court has found merit in a limited part of the moving defendants' arguments. The moving defendants now assert that the aspects of the statute that are unconstitutional when applied to this case may not be severed because they are so firmly connected with the intended scope of the statute that the defective portions cannot be excised without fundamentally disrupting the General Assembly's intended statutory scheme. See *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523–524, 644 N.E.2d 369, 377–378. The *Sheward* court adopted a three-part test from *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33. That test reads as follows:

" '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' " *Id.,* quoting *State v. Bickford* (1914), 28 N.D. 36, 39–41, 147 N.W. 407, 409.

As to the first part of the test, the court finds that the permissible and defective parts may be separated and stand on their own. The potentially overbroad part of the statute (the apparent attempt to proscribe protected expressions) is not explicitly stated; the statute plainly prohibits only "acts" of initiations. The vague portion, the "mental harm" phrase, is also capable of standing separate from the "physical harm" phrase.

As to the second part of the test, the court finds that the defective parts are not so connected that it would be impossible to give effect to the apparent intent of the General Assembly were the court to strike these parts. See *Brown*, 90 Ohio App.3d 674, 630 N.E.2d 397 (with R.C. 2903.31, the legislature intended to regulate the dangers posed by hazing and to punish acts causing injury).

And, as to the third part of the test, the court finds that no words are necessary in order to separate the valid and invalid provisions. Again, the statute may easily be read as proscribing only "acts of initiation causing physical harm."

Based on the foregoing, the court finds that the problematic portions of this statute as applied to the defendants in this case may properly be severed.

JUDGMENT ENTRY

It is ordered that the motions to dismiss filed by defendants The Pi Kappa Alpha Fraternity and Epsilon–Epsilon Chapter, Pi Kappa Alpha House Corporation, are granted in part and denied in part. It is further ordered that, as applied to the defendants in this case, R.C. 2903.31 does not apply to expressions protected by the First Amendment and does not apply to "mental harm" caused by acts of initiation.

*Judgment accordingly* ■