DUITCH et al., Appellants,

v.

CANTON CITY SCHOOLS et al., Appellees.

[Cite as *Duitch v. Canton City Schools*, 157 Ohio App.3d 80, 2004-Ohio-2173.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2003–CA–00284.

Decided April 26, 2004.

Edward Gilbert, for appellant.

Matthew J. Moarkling and Susan S. McGowen, for appellee.

GWIN, Presiding Judge.

{¶ 1} Plaintiffs Nancy Duitch, individually and as the guardian of Nathan Duitch, a minor, appeal from a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of defendants Canton City Schools District Board of Education on behalf of the Canton City Schools and the city of Canton Board of Education. Appellants' complaint named not only these two defendants, but also various John Doe teachers, the principal of McKinley High School, various assistant principals, and the band director of Canton City Schools. Appellants assign four errors to the trial court:

{¶ 2} "The lower court erred when it granted the appellees' motion to strike the monetary prayers for relief and names of individual school board officials from the appellants' complaint.

{¶ 3} "The lower court erred when it granted the appellees' motion for judgment on the pleadings in part.

{¶ 4} "The lower court erred when it granted the appellees' motion for summary judgment on the appellants' claims under R.C. 2307.44, et seq.

{¶ 5} "The lower court erred when it denied the appellants' motion for reconsideration and struck the appellees' amended prayer for relief."

{¶ 6} Appellants' complaint alleged that in the summer of 1999, appellant Nathan Duitch was a freshman beginning school at McKinley High School in Canton, Stark County, Ohio. Appellants alleged that over the years, freshmen have been hazed and severally beaten by football players, senior band members, and upperclassmen during the first few days of school and band practice. Appellant Nathan Duitch was a band member.

{¶ 7} Appellants' complaint alleged that freshman-beating day was a tradition and honor endorsed by the school board and the high school administration. Appellants alleged that the appellees did not enforce any policy against hazing and allowed the events to continue without correction or penalty. As a result, Nathan was severally beaten while on school property, receiving numerous bruises and injuries to his neck and back. Additionally, Nathan was threatened

with other beatings in retaliation. Appellants prayed for relief, for personal injury, pain, suffering, anguish, attorney fees, costs of the action, general compensatory damages for humiliation, and embarrassment.

{¶ 8} Appellants filed their complaint on December 13, 2002. On January 30, 2003, appellees filed a motion to strike the monetary prayer for relief and the names of individual school board officials from the complaint. On March 21, 2003, the trial court granted the motion in its entirety.

{¶ 9} In the interim, on January 31, 2003, the appellees moved for judgment on the pleadings in part, asking the court to find R.C. 2307.44 unconstitutional in part and asking for dismissal of the prayers for attorney fees and punitive damages. On March 21, 2003, the same day the court ruled on the motion to strike, the court sustained the motion for judgment on the pleadings in part.

{¶ 10} On April 23, 2003, appellants moved the court for reconsideration of its earlier judgments. The court overruled this motion on May 9, 2003. Finally, the trial court entered summary judgment on the remaining issues and defendants on July 15, 2003. Thereafter, appellant filed its notice of appeal, citing as the judgment appealed from the court's judgment of July 15, 2003.

{¶ 11} Appellees urge that this court does not have jurisdiction over the first, second, and fourth assignments of error because the notice of appeal cites the judgment entry of July 15, 2003, as the judgment appealed from.

{¶ 12} App.R. 3(D) requires all notices of appeal to designate the judgment, order, or part thereof from which the appeal is taken. Appellees urge that because the only judgment entry referenced by appellant is the summary judgment in favor of the Canton City Schools and school board, none of the other judgments entered by the court is properly before us.

{¶ 13} Appellees concede that the prior orders were interlocutory in nature and could not have been appealed prior to the July 15, 2003 judgment entry that rendered the orders final.

{¶ 14} In *Maritime Manufacturers, Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 24 O.O.3d 344, 436 N.E.2d 1034, the Ohio Supreme Court reviewed a ruling of the court of appeals on jurisdictional matters. In *Hi–Skipper*, the trial court rendered a judgment, and the losing party filed a motion for a new trial. The Court of Appeals for Lake County held that because the notice of appeal specified that the appeal was taken from the order denying the motion for a new trial, it did not have jurisdiction over the merits of the underlying judgment. The Ohio Supreme Court reversed, finding that the appellants had sufficiently reserved their right to appeal, because the notice of appeal did not materially mislead the appellees and because Ohio law favors judgments on the merits, rather than on procedural issues.

{¶ 15} There appears to be a split of authority among the courts of appeals in Ohio regarding whether the final judgment entered by the trial court subsumes all its prior interlocutory orders, such that the notice of appeal does need not specifically reference all the prior judgments but only the judgment that rendered them final. It does not appear that the Ohio Supreme Court has spoken directly on this matter.

{¶ 16} We find that even if the issues raised by the first, second, and fourth assignments of error are properly before this court, they are nevertheless moot in light of our holding in assignment of error three. Because we find infra that the trial court was correct in finding that the undisputed facts of this case do not fall under R.C. 2307.44, we find that these issues do not survive.

{¶ 17} The first, second, and fourth assignments of error are overruled as moot.

## III

{¶ 18} The trial court found that R.C. 2307.44 provides a civil liability for hazing and refers to initiation activities or hazing as related to student organizations. The trial court found that the undisputed facts of this case are not those contemplated by the statute. The court found that "student organization" means specific organizations, as opposed to the entire student body.

{¶ 19} R.C. 2307.44 states:

"Any person who is subjected to hazing, as defined in division (A) of section 2903.31 of the Revised Code, may commence a civil action for injury or damages, including mental and physical pain and suffering that result from the hazing. The action may be brought against any participants in the hazing, any organization whose local or national directors, trustees, or officers authorized, requested, commanded, or tolerated the hazing, and any local or national director, trustee, or officer of the organization who authorized, requested, commanded, or tolerated the hazing. If the hazing involves students in a primary, secondary, or post-secondary school, university, college, or any other educational institution, an action may also be brought against any administrator, employee, or faculty member of the school, university, college, or other educational institution who knew or reasonably should have known of the hazing and who did not make reasonable attempts to prevent it and against the school, university, college, or other educational institution. If an administrator, employee, or faculty member is found liable in a civil action for hazing, then notwithstanding Chapter 2743. of the Revised Code, the school, university, college, or other educational institution that employed the administrator, employee, or faculty member may also be held liable.

"The negligence or consent of the plaintiff or any assumption of the risk by the plaintiff is not a defense to an action brought pursuant to this section. In an action against a school, university, college, or other educational institution, it is an affirmative defense that the school, university, college, or other institution was actively enforcing a policy against hazing at the time the cause of action arose."

{¶ 20} R.C. 2903.31 defines the criminal act of hazing:

"(A) As used in this section, 'hazing' means doing any act or coercing another, including the victim, to do any act of initiation into any student or other organization that causes or creates a substantial risk of causing mental or physical harm to any person.

"(B)(1) No person shall recklessly participate in the hazing of another.

"(2) No administrator, employee, or faculty member of any primary, secondary, or post-secondary school or of any other educational institution, public or private, shall recklessly permit the hazing of any person.

"(C) Whoever violates this section is guilty of hazing, a misdemeanor of the fourth degree."

{¶ 21} Our research uncovered very few Ohio cases concerning hazing. In *Carpetta v. Pi Kappa Alpha Fraternity* (1998), 100 Ohio Misc.2d 42, 718 N.E.2d 1007, the Court of Common Pleas of Lucas County reviewed a civil action for hazing in the context of initiation into a fraternity. In *State v. Brown* (1993), 90 Ohio App.3d 674, 630 N.E.2d 397, the Eleventh District Court of Appeals reviewed a conviction for hazing as part of an initiation in a college sorority. Interestingly, the *Brown* court pointed out that hazing, unlike assault, is a strict-liability crime. This is because prospective sorority members arguably consent to the hazing out of their desire to join the sorority. In a somewhat different posture, the Eleventh District Court of Appeals also examined a hazing incident in *Landmark Ins. Co. v. Cincinnati Ins. Co.* (Oct. 12, 2001), Portage App. No. 2000–P–0093, 2001 WL 1216986. In the *Landmark* case, a fraternity pledge was threatened with black-balling if he did not slide into a mud pit after participating in a tug of war. The pledge slid head first into the mud pit and suffered serious injuries resulting in quadriplegia. The pledge brought suit against Kent State University, Delta Upsilon Fraternity, and number of individuals under the anti-hazing statute. The parties reached a settlement in this matter, and the Portage County Court of Appeals did not rule on whether the activities constituted hazing.

{¶ 22} In *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 732 N.E.2d 969, the Supreme Court reviewed an action involving, inter alia, alleged acts of hazing in the Mentor Police Department. Again, the Supreme Court did not rule directly on the issue of what constitutes hazing,

because this action involved the question of whether internal affairs investigative records were exempt from disclose under the Public Records Act.

{¶ 23} This court also reviewed cases from other states. The cases involved initiations into fraternities and sororities, a lacrosse club, a high school football summer camp, a naval academy, a hockey team, a club known as the "Stooge Club," and even a Boy Scout troop. This court found no cases with facts similar to those in the case at bar.

{¶ 24} In *McKenzie v. Maryland* (2000), 131 Md.App. 124, 748 A.2d 67, the Court of Special Appeals reviewed the Maryland hazing statute, similar to Ohio's statute. The court discussed what it referred to as a "time-honored initiation ritual," illegal in various states since at least 1894. The *McKenzie* opinion exhaustively discussed activities that constitute hazing, and noted many such hazing incidents use secrecy and peer pressure to compel victims to submit to the hazing. The *McKenzie* opinion makes it clear that it considers hazing to occur in situations where initiates willingly subject themselves to acts in order to be accepted into a social or other group whose membership is voluntary. The *McKenzie* court found that this is why Maryland law bars consent as a defense. We note that Ohio law does likewise.

{¶ 25} Because this matter was decided on summary judgment, this court reviews the matter de novo, using the same standard the trial court utilized, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. Pursuant to Civ.R. 56(C) we must construe all of the evidence and stipulations most strongly in the favor of the nonmoving party and can find a summary judgment appropriate only if reasonable minds could come to but one conclusion and that the conclusion is adverse to the party against whom the motion is made. We must also construe all inferences which could be drawn from the evidence in favor of the nonmoving party, *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311.

{¶ 26} Appellant alleges that "Freshman Friday" was a common practice at McKinley High School and that the faculty and administration knew or should have known it occurred. Prior to the incident, the administration did not warn the students about the dangers of hazing, nor did it discuss with the students its anti-hazing policy. Reasonable minds could differ regarding whether or not the school's anti-hazing policy was actually included in each information packet handed out to various incoming students. We find, however, that this is not a fact material to this case.

{¶ 27} On the day in question, appellant Nathan Duitch alleges that while he was having his lunch, he was approached by two upperclass students who told him that there was a jazz band meeting in the restroom. When Nathan walked into the restroom, he saw eight to ten students crowded there. Becoming

suspicious, Nathan attempted to leave, whereupon one of the upper classmen yelled to another, "Escort this freshman into the restroom." Another upper class student said "Welcome to McKinley" and pushed Nathan into the restroom with one hand. Then the others all swarmed around Nathan and began hitting him with closed fists. After punching Nathan numerous times and kicking him, the upper classmen left the restroom.

{¶ 28} As stated above, R.C. 2903.31 defines the elements of hazing as doing any act or coercing another including the victim to do any act of initiation into any student or other organization that causes or creates a substantial risk of causing mental or physical harm to any person.

{¶ 29} Appellants argue that reasonable minds could find on "Freshman Friday" that appellant Nathan Duitch was initiated into the McKinley Band and/or the McKinley student body. It is undisputed that appellant was lured into the restroom and was under the impression that he was attending a jazz band meeting. In the alternative, appellants argue that reasonable minds could find, based on the tradition of "Freshman Friday," and on the statement by one of the boys who assaulted Nathan, "Welcome to McKinley," that Nathan was initiated into the student body of McKinley High School. The trial court specifically stated that it was not persuaded by the mere fact that the upperclassmen referenced the school band, or even because the attacking upper classmen may have been members of the school band. The court found that the attack was merely due to the appellant's status as a freshman and that there was no evidence he was being initiated into student organizations.

{¶ 30} We find, construing the evidence and the inferences therefrom most favorably towards appellants, that this behavior is not governed by R.C. 2903.31 and R.C. 2307.44. We find that the actions of the students did not constitute initiation into any student or other organization. "Freshmen Friday" is a day upperclassmen bully incoming freshman. Nathan did not submit willingly to the activities and had he known what was planned, he probably would not have entered the restroom.

{¶ 31} The concept of a student organization, in this context, does not mean simply attending a given high school and therefore being a member of the student body. We find that initiation into an organization implies that membership in the organization is voluntary, and that the victim has, through his or her actions or otherwise, consented to the hazing. This is the reason why the legislature chose to include language finding that negligence, consent, and assumption of the risk by the plaintiff are not defenses.

{¶ 32} We find that even if we assume that the school authorities were aware of and tolerated "Freshmen Friday" or behaved only in a reactive, not proactive, manner to deal with it, these actions nevertheless do not constitute hazing as

contemplated by the legislature. We find that the trial court did not err in holding that reasonable minds could not differ as to whether there was a violation of R.C. 2307.44 and/or 2903.31.

{¶ 33} The third assignment of error is overruled.

{¶ 34} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Judgment affirmed.

EDWARDS and BOGGINS, JJ., concur.